E-FILED
Monday, 14 December, 2020 04:32:02 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| YASH VENTURE HOLDINGS, LLC, as designee of Manoj Baheti, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-04176-SLD-JEH |
| | ) | |
| MOCA FINANCIAL INC,[1] JOHN A. BURNS, and RAJEEV ARORA, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court are Defendants Moca Financial Inc. ("Moca"),[2] John A. Burns, and Rajeev Arora's Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 2;[3] Rule 12(b)(6) Motion to Dismiss Amended Complaint for Failure to State a Claim, ECF No. 13; and Motion for Leave to File Reply to Plaintiff's Response to Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 15. For the reasons that follow, the motion to dismiss for lack of jurisdiction is DENIED, the motion to dismiss for failure to state a claim is GRANTED, and the motion for leave to file a reply is GRANTED.

---

[1] Defendants sometimes refer to this entity with a comma: Moca Financial, Inc. *See, e.g.*, Mot. Dismiss Lack Personal Jurisdiction 1, ECF No. 2. The Court follows the Amended Complaint's caption and uses no comma.
[2] In court filings, this entity is sometimes referred to in all capital letters as MOCA and sometimes as Moca. The Court follows Defendants' lead and uses Moca, other than when MOCA is used in quotes and document titles.
[3] Defendants alternatively moved for leave to dismiss Plaintiff Yash Venture Holdings, LLC's complaint for failure to state a claim, but Plaintiff filed an Amended Complaint, ECF No. 11, so the Court mooted the part of the motion seeking dismissal for failure to state a claim, Sept. 25, 2019 Text Order. The Court therefore refers to this motion only as Motion to Dismiss for Lack of Personal Jurisdiction.

# BACKGROUND[4]

Moca is a start-up company that provides functionalities to the credit card industry, including developing payment gateway software. Burns is Moca's chief executive officer, and Arora is its chief operating officer. Mem. Supp. Mot. Dismiss Failure State Claim 1, ECF No. 14.

In December 2018, Defendants approached Manoj Baheti to become an investor in Moca. They provided him with a memorandum of understanding regarding formation of Moca, which stated, in relevant part, that the participants would be Burns, Baheti, and Arora and that Burns would have twenty percent equity in the company, Baheti would have fifteen percent equity, and Arora would have sixty-five percent equity. MOCA Financial MOU for Company Formation 1, Am. Compl. Ex. A, ECF No. 11-1 ("MOU"). The MOU listed the parties' responsibilities, in part, as follows: Burns was "[r]esponsible for creating and marketing products" and using his contacts to get a sponsoring bank and launch a Moca card; Baheti was responsible for providing support for development up to fifteen percent of the evaluation of the company; and Arora was responsible for providing software, enhancing it as needed, and running day to day operations of the company. *Id.*

Baheti agreed to the MOU. He "caused the formation" of Plaintiff Yash Venture Holdings, LLC "for the purpose of owning the fifteen percent . . . ownership interest in MOCA." Resp. Mot. Dismiss Lack Personal Jurisdiction 3 n.2, ECF No. 12. The Court hereinafter refers to Baheti and Plaintiff together as Plaintiff. "According to the MOU," Plaintiff was to receive a fifteen percent ownership interest in exchange for development work related to payment gateway

---

[4] When ruling on a motion to dismiss, a court must take all of the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). Unless otherwise noted, the facts set forth in this section are taken from the Amended Complaint.

software up to fifteen percent of Moca's initial valuation of $4,000,000.00, that is, $600,000.00. Am. Compl. 3–4, ECF No. 11.  In other words, Plaintiff would provide Moca with $600,000.00's worth of software development work and receive fifteen percent of Moca's ownership; Moca would pay Plaintiff for any software development work in excess of that amount.  In reliance on the MOU, at the direction of Plaintiff, Yash Technologies, Inc., which is also owned by Plaintiff, performed substantial development work related to the payment gateway software.

In March 2019, Moca provided Plaintiff with a term sheet which "was intended to more fully memorialize the MOU." *Id.* at 4.  It changed the ownership structure as to other parties—it added additional owners and changed Arora's ownership share to fifteen percent, for example— but did not change Plaintiff's ownership interest.  *See* Term Sheet for the Formation of Moca Financial, Inc. 2, Am. Compl. Ex. B, ECF No. 11-2 ("Term Sheet").  It did, however, change the investment required by Plaintiff from $600,000.00's worth of software development to $600,000.00 cash.  *Id.*  The parties discussed and negotiated changes to the Term Sheet other than Plaintiff's ownership interest.  The parties agreed to the ownership structure as stated in the Term Sheet (i.e., that Plaintiff would be issued a fifteen percent ownership interest), but Moca failed to issue the requisite stock to Plaintiff.

On April 30, 2019, Moca created and provided to Plaintiff a capitalization table.  *See* Capitalization Table as of April 30, 2019, Am. Compl. Ex. C, ECF No. 11-3.  This table changed Plaintiff's ownership interest from fifteen percent to seven-and-a-half percent.  *Id.*  When Plaintiff inquired why its ownership interest was being diluted, Defendants informed it that other parties were involved in creating an opportunity for Moca and had to be compensated with equity in Moca.  Plaintiff objected, stating that its interest should not be diluted for that purpose because it did not agree for its ownership interest to be diluted.

3

Burns and Arora sent Plaintiff's representative an email on June 10, 2019.  They stated that if Plaintiff was "unable to see the value [they] . . . and the Key Execs ha[d] brought to [Plaintiff's] proposed $600,000 strategic investment in Moca since the March time frame, and the importance of driving valuation instead of ownership interest, then [they were] ready to move on without [its] investment."  June 10, 2019 Email, Am. Compl. Ex. D, ECF No. 11-4.  They also stated that if Plaintiff wanted to maintain its ownership position at fifteen percent, they could discuss an additional investment of $500,000.00.  *Id.*  On June 12, 2019, Burns presented Plaintiff with three investment options.  *See* June 12, 2019 Email, Am. Compl. Ex. E, ECF No. 11-5.  None offered it a fifteen percent ownership interest for $600,000.00 in the form of software development work.

Defendants thereafter presented Plaintiff with documents related to its ownership in Moca, but because the documents did not accurately reflect its fifteen percent ownership interest, Plaintiff did not sign them.  On July 4, 2019, Burns emailed Plaintiff indicating that because it had failed to execute the documents, it forfeited the right to Moca ownership.

 Plaintiff filed suit against Defendants on July 29, 2019.  Compl., Not. Removal Ex. A, ECF No. 1-1.  Defendants removed the case to this Court, Not. Removal, ECF No. 1, and subsequently filed a motion to dismiss for lack of personal jurisdiction, arguing that Defendants had no contacts with Illinois, Mot. Dismiss Lack Personal Jurisdiction 5–6; *e.g.*, Mem. Supp. Mot. Dismiss Lack Personal Jurisdiction 1, ECF No. 2-3.

Plaintiff filed a nine-count Amended Complaint on September 18, 2019.  Count I alleges securities fraud under section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78a–78qq.  Am. Compl. 6–8.  Count II alleges securities fraud under the Illinois Securities Law of 1953 (the "ISL"), 815 ILCS 5/1–19.  Am. Compl. 8–9.  Count III alleges

common law fraud.  *Id.* at 9.  Count IV alleges breach of contract.  *Id.* at 9–10.  Count V alleges promissory estoppel.  *Id.* at 10–11.  Count VI alleges equitable estoppel.  *Id.* at 11–12.  Count VII alleges breach of fiduciary duty against Burns, *id.* at 12, and count VIII alleges breach of fiduciary duty against Arora, *id.* at 12–13.  Count IX is for injunctive relief.  *Id.* at 13–14. Defendants move to dismiss the Amended Complaint for failure to state a claim.

## DISCUSSION

### I.    Motion for Leave to File a Reply

"No reply to [a] response [to a motion] is permitted without leave of Court."  CDIL-LR 7.1(B)(3).  Defendants move for leave to file a reply to Plaintiff's response to their motion to dismiss for lack of personal jurisdiction, arguing that Plaintiff's response addresses claims newly asserted in the Amended Complaint and that Plaintiff references a factual basis for personal jurisdiction—a bank account—for the first time in its response.  Mot. Leave File Reply 1–2. Plaintiff opposes the motion, arguing that "[t]he lion's share of the . . . proposed Reply merely attacks the merits of [its] claims of securities law violations."  Resp. Mot. Leave File Reply ¶ 5, ECF No. 18 (citation omitted).  Plaintiff also argues that Defendants should have addressed the bank account earlier and that Defendants misrepresent the facts regarding the bank account.  *Id.* ¶¶ 9–10.

"Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the Court finds that a reply from the moving party would be helpful to its disposition of the motion . . . ."  *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011).  Although the proposed reply primarily argues that Plaintiff has not adequately pleaded its securities fraud claims and refers back to the motion to dismiss for lack of personal jurisdiction for the common law fraud claim, it

is helpful for the Court to know Defendants' position as to whether the Court has personal jurisdiction over it with respect to those new claims. The motion for leave to file a reply is therefore GRANTED. The Clerk is directed to file the reply, Mot. Leave File Reply Ex. 1, ECF No. 15-1, on the docket.

## II.     Motion to Dismiss for Lack of Personal Jurisdiction

### a. Legal Standard

A party may move to dismiss a complaint because the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "[T]he plaintiff bears the burden of demonstrating the existence of [personal] jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the court rules on a motion to dismiss for lack of personal jurisdiction "based on the submission of written materials without holding an evidentiary hearing, the plaintiff need only make out a *prima facie* case of personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).

"[A] federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). The exercise of jurisdiction must also comport with due process. *See id.* ("Under . . . the Fourteenth Amendment's due process clause, a defendant is subject to personal jurisdiction in a particular state only if the defendant had certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (quotation marks omitted)); *Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 807 n.3 (7th Cir. 2002) ("[When a federal statute allows for nationwide service of process,] [a] district court's exercise of personal jurisdiction over a defendant is constitutional, notwithstanding a complete

6

lack of contact between the defendant and the forum district, so long as the defendant has sufficient contacts with the United States as a whole.").

### b.  Analysis

Plaintiff argues only that the Court has specific personal jurisdiction over Defendants. Resp. Mot. Dismiss Lack Subject Matter Jurisdiction 1, ECF No. 12; *cf. Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (distinguishing between general jurisdiction, which allows a court to hear any claim against the defendant, and specific jurisdiction, which allows a court to hear cases arising out of the defendant's contacts with the forum state).

### 1.  Personal Jurisdiction over the Federal Claim

Plaintiff's Amended Complaint asserts that Defendants violated the Exchange Act.  The Exchange Act provides for nationwide service of process.  15 U.S.C. § 78aa(a); *Fitzsimmons v. Barton*, 589 F.2d 330, 332 (7th Cir. 1979) (recognizing that § 78aa provides for nationwide service of process).  "[W]hen a federal statute authorizes nationwide service, the only question for determining personal jurisdiction is whether the defendant has minimum contacts with the United States; contacts with the forum state are not required."  *Aboloma v. U.S. Foods & Pharms., LLC*, No. 19-cv-418-jdp, 2020 WL 905732, at *2 (W.D. Wis. Feb. 25, 2020) (citing *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987)).

Defendants do not dispute that the Exchange Act provides for nationwide service of process.  Reply ¶ 2.  Indeed, their only argument about why the Court lacks personal jurisdiction over them with respect to this claim is that "mere conclusory allegations of a securities fraud claim will not suffice to convey personal jurisdiction."  *See id.*  They cite no authority for that proposition.

Because Moca is a Delaware corporation with its principal office in Texas, Burns is a Texas resident, and Arora is a North Carolina resident, Not. Removal ¶ 3, they have sufficient contacts with the United States such that the Court has personal jurisdiction over them with respect to this claim.  *See Lisak*, 834 F.2d at 672 ("[T]he Securities Exchange Act . . . creates personal jurisdiction over anyone within the United States [and] . . . is consistent with the Due Process Clause of the fifth amendment."); *Fitzsimmons*, 589 F.2d at 333 ("[T]here can be no question but that the defendant, a resident citizen of the United States, has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court.").  The Court therefore has personal jurisdiction over Defendants with respect to the federal securities fraud claim.  Defendants' argument that Plaintiff has failed to adequately plead this claim is more appropriately considered with the motion to dismiss for failure to state a claim.

## 2.  Personal Jurisdiction over Remaining Claims

Though the parties do not address this, the Seventh Circuit recognizes the doctrine of "pendent personal jurisdiction."  *Robinson Eng'g Co. Pension Plan & Tr. v. George*, 223 F.3d 445, 449 (7th Cir. 2000).  Under this doctrine, if a court has personal jurisdiction over a defendant with respect to one of the plaintiff's claims, the court can exercise personal jurisdiction over the defendant for the plaintiff's other claims so long as they arise out of the same nucleus of operative facts.  *See id.*[5]  Here, there is no question that all of the claims arise out of the same facts—the alleged offer or promise to give Plaintiff a fifteen percent ownership in Moca and the failure of Defendants to deliver on that offer or promise.  Therefore, the Court has personal jurisdiction over Defendants with respect to Plaintiff's state law claims.  *See*

---

[5] Some courts have interpreted *Robinson* to recognize pendent personal jurisdiction only in cases involving federal statutes that authorize nationwide service of process.  *See Mackey v. IDT Energy, Inc.*, 432 F. Supp. 3d 783, 785 (N.D. Ill. 2020).  As this case involves such a federal statute, the Court need not consider whether pendent personal jurisdiction applies in other cases.

*Calzaretta v. Rezny*, No. 17 C 2408, 2017 WL 6039965, at *2 (N.D. Ill. Dec. 6, 2017) (finding

that, where the Illinois-resident plaintiff alleged securities fraud under the Securities Act as well

as state law fraud claims arising out of an investment opportunity offered by a Wisconsin

defendant, "because the Securities Act claim confers personal jurisdiction, jurisdiction also exists

over [the plaintiff's] state law claims").

 Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is therefore DENIED.

### III. Motion to Dismiss for Failure to State a Claim

#### a. Legal Standard

 A court can dismiss a complaint if it fails to state a claim upon which relief can be

granted.  Fed. R. Civ. P. 12(b)(6).  In determining whether such a claim has been stated, a court

should consider the complaint's well-pleaded factual allegations and "determine whether they

plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The

allegations must "raise a right to relief above the speculative level."  *Tamayo v. Blagojevich*, 526

F.3d 1074, 1084 (7th Cir. 2008) (quotation marks omitted).  In addition to the allegations in the

complaint itself, a court can consider "documents attached to the complaint, documents that are

critical to the complaint and referred to in it, and information that is subject to proper judicial

notice" when ruling on a motion to dismiss.  *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1

(7th Cir. 2012).  The court must accept all well-pleaded allegations in the complaint as true and

draw all reasonable inferences in favor of the plaintiff.  *Indep. Tr. Corp. v. Stewart Info. Servs.

Corp.*, 665 F.3d 930, 934 (7th Cir. 2012).

#### b. Analysis

 The Court addresses Plaintiff's claims in the same order in which they are addressed in

the parties' briefing.

### i. Contract Claim

Plaintiff alleges that "[t]he MOU and . . . Term Sheet are evidence of [a] contract whereby MOCA was to provide [Plaintiff] . . . with a fifteen percent . . . ownership interest in MOCA in exchange for an investment of $600,000, in the form of [s]oftware development work." Am. Comp. 9–10. Further, it alleges that it caused software development work to be performed under the contract, but Moca has refused to perform. *Id.* at 10.

The elements of a breach of contract claim are: 1) the existence of a contract; 2) performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages caused by the breach. *Assoc. Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1168 (Ill. App. Ct. 2005). Defendants argue that the Amended Complaint fails to state a contract claim because it does not "identify any of the terms of the alleged contract other than referring to" the MOU. Mem. Supp. Mot. Dismiss Failure State Claim 4. They argue that "[t]he clauses of the MOU conveniently omitted by . . . [P]laintiff in its Amended Complaint belie any reliance on the MOU as the basis for a contract claim," *id.* at 5, citing case law for the proposition that an exhibit attached to a complaint controls over contrary allegations in the complaint, *id.* (citing *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)). Likewise, they argue that the Term Sheet was non-binding and was not signed by any parties, so it is not a binding contract. *Id.* Finally, they argue that Plaintiff "does not plead any facts supporting the existence of an oral contract for the sale of 15% of the common stock of Moca in exchange for software development work." *Id.* at 6.

Plaintiff responds that it "has clearly alleged it was promised a fifteen percent . . . ownership interest in MOCA in exchange for software development work, it has caused the software development work to be provided, MOCA has not issued [Plaintiff's] stock and

[Plaintiff] has been damaged as a result," and the Amended Complaint therefore "is sufficient to state a breach of contract claim."  Resp. Mot. Dismiss Failure State Claim 5, ECF No. 17.  It argues that it is merely alleging that the MOU and Term Sheet are evidence of the contract, not that they "*are* the contract or the *basis* of a breach of contract claim."  *Id.*  It clarifies that it "is *not* asserting a breach of written contract claim *based* on the MOU or the . . . Term Sheet as the written contract."  *Id.* at 6.  Based on these clarifications, Defendants' argument that the exhibits attached to the Amended Complaint clearly show there was no enforceable contract must be denied.  Plaintiff is not alleging these were binding, enforceable contracts.

But the question remains: what is the contract Plaintiff is alleging exists, and has it alleged facts that support the contract's existence?  *Cf.* Mem. Supp. Mot. Dismiss Failure State Claim 6 (arguing that if Plaintiff's contract claims are not based on the MOU and Term Sheet, then it has failed to allege facts showing an oral contract).  "To allege the existence of [a] contract [the] plaintiff must present facts indicating an offer, acceptance, and consideration." *Bensdorf & Johnson, Inc. v. N. Telecom Ltd.*, 58 F. Supp. 2d 874, 877 (N.D. Ill. 1999) (citing *Payne v. Mill Race Inn*, 504 N.E.2d 193, 196 (Ill. App. Ct. 1987)); *see also Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007) (listing the elements of a breach of contract claim under Illinois law as: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages" (quotation marks omitted)).  It appears that Plaintiff is alleging the "promise[] [of] a fifteen percent . . . ownership interest in MOCA in exchange for software development work" is the contract.  *See* Resp. Mot. Dismiss Failure State Claim 5.  Plaintiff points to the allegations in the Amended Complaint that Baheti agreed to the MOU and that the parties agreed to the ownership structure stated in the Term Sheet.  *Id.* at 5–6 (citing Am. Compl. 3, 4).

11

Perhaps Plaintiff is arguing that the MOU and Term Sheet were offers that were later accepted.  But the MOU cannot be considered an offer.   "The test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender."  *Word v. City of Chicago*, 946 F.3d 391, 397 (7th Cir. 2020) (quotation marks omitted) (discussing Illinois law); *McCarty v. Verson Allsteel Press Co.*, 411 N.E.2d 936, 943 (Ill. App. Ct. 1980) ("[W]here the so-called offer is not intended to give the so-called offeree the power to make a contract there is no offer.").  The MOU was clearly not intended give Plaintiff the power to accept and create a contract; it explicitly stated that "[t]he proposal [wa]s in the initial state of discussion."  MOU 1 ("This forms the basis for future discussions for equity, roles and responsibilities and marketing.").  The Term Sheet, to the extent it could be considered an offer for fifteen percent ownership, did not contain the terms Plaintiff is basing its contract claim on; the Term Sheet offered fifteen percent ownership for $600,000.00 cash.  *See* Term Sheet 2.  Plaintiff did not accept the Term Sheet's offer of fifteen percent ownership in exchange for a cash investment.  If there was another offer for fifteen percent ownership in exchange for software development services, it is not pleaded in the Amended Complaint.

Simply put, the Court concludes that Plaintiff has not alleged facts sufficient to state a claim for breach of contract.  It must allege the existence of a contract, which depends on offer and acceptance.  Plaintiff cannot point the Court to any allegations which would support finding an enforceable contract between the parties.  *Cf. Word*, 946 F.3d at 397 ("Word has not identified any statement, oral or written, that constitutes a contractual offer.  He has merely alleged the legal conclusion that there was a contract.").

### ii. Promissory Estoppel

In the Amended Complaint, Plaintiff alleges that "Defendants made a clear and unambiguous promise to issue [Plaintiff] a fifteen percent . . . ownership interest in MOCA." Am. Compl. 10.  It alleges that it reasonably relied on that promise by causing software development services to be provided to its detriment because it has not received the fifteen percent ownership.  *Id.*

"To establish a claim [of promissory estoppel], the plaintiff must prove that (1) [the] defendant made an unambiguous promise to [the] plaintiff, (2) [the] plaintiff relied on such promise, (3) [the] plaintiff's reliance was expected and foreseeable by [the] defendant[], and (4) [the] plaintiff relied on the promise to its detriment."  *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523–24 (Ill. 2009).  Defendants argue that the MOU and Term Sheet "eliminate any claim of an unambiguous promise" because "[t]he MOU was for discussion purposes, and the Term Sheet was specifically made terminable at will until final documents were prepared."  Mem. Supp. Mot. Dismiss Failure State Claim 6–7.  Further, it argues that "Plaintiff does not plead that the promise of the 15% interest in Moca was promised in any other way."  *Id.* at 7.

Plaintiff argues that the Amended Complaint states a promissory estoppel claim because it alleges: a promise (for fifteen percent ownership interest); reasonable and justifiable reliance on that promise (it caused the software development work to be performed); that reliance was foreseeable by Defendants (Moca accepted the requested work); and that its reliance caused it injury (it caused the software develop work to be performed, but it did not receive the promised stock in return).  Resp. Mot. Dismiss Failure State Claim 7.  Plaintiff does not respond to

Defendants' argument that the MOU and Term Sheet contained ambiguous promises and that it failed to allege an unambiguous promise in another way.  *See id.*

The Court agrees with Defendants that this claim is insufficiently pleaded.  The only factual allegations regarding a promise for fifteen percent of ownership are regarding the MOU and the Term Sheet.  *See* Am. Compl. 2–4.  The promise contained in the MOU is clearly not an unambiguous promise to give Plaintiff fifteen percent of Moca's ownership—it sets forth only the parties' initial discussions and an initial plan for the company's formation.  *Cf. Taylor v. JPMorgan Chase Bank, N.A.*, 958 F.3d 556, 566 (7th Cir. 2020) (holding, in considering a promissory estoppel claim under Indiana law, which requires a plaintiff to show a definite promise, that a statement that a bank would modify a mortgage if the plaintiff qualified "did not convey a definite promise," because the promise merely "expressed [the bank's] provisional willingness to make a future commitment, not a definite promise to modify [the plaintiff's] mortgage").  And because the MOU clearly indicates it is a preliminary document (and contemplates a "formal agreement on company structure and equity pattern," based on which the company would be formed, MOU 1), Plaintiff could not have reasonably relied upon any promise contained within that document.  *Cf. Dawson v. City of Geneseo*, 127 N.E.3d 655, 659, 664 (Ill. App. Ct. 2018) ("Based upon the disclaimer that was contained in the Personnel Ordinance, [which stated that the terms in the ordinance were not intended to create a contract or any kind of contractual obligations and that the ordinance could be amended or cancelled at any time], plaintiff could not reasonably rely on any promises made in the ordinance.").

Regardless of whether the Term Sheet contains an unambiguous promise, the Court fails to see how Plaintiff's reliance (which it alleges was via conducting software development work) would have been reasonable or justified by the promise of the Term Sheet: fifteen percent

14

ownership for $600,000.00 cash.  Along the same lines, Defendants could not have foreseen that Plaintiff would rely on the Term Sheet by conducting software development services.

Plaintiff cannot rely on the representations contained within the Term Sheet or MOU to establish its promissory estoppel claim.  And, like with the breach of contract claim, Plaintiff fails to point the Court to any other factual allegation that Defendants made a promise to give it fifteen percent ownership if it did software development work.  Defendants' motion, therefore, is granted as to this claim.

### iii.  Equitable Estoppel

In the Amended Complaint, Plaintiff alleges that "Defendants made a clear and unambiguous promise to issue [it] a fifteen percent . . . ownership interest in MOCA" and that at that time, they "knew they would have insufficient capital to fully develop the [s]oftware and commence MOCA's business, and issue [Plaintiff] a fifteen percent . . . ownership interest." Am. Compl. 11.  It alleges that "Defendants knew they would be required to raise additional capital and issue equity for such capital and thereby dilute" Plaintiff's interest.  *Id.*  Further, it alleges that Defendants intended or expected their promise for fifteen percent ownership in Moca to be acted upon by Plaintiff and that it relied on the promise to its detriment.  *Id.*

A plaintiff must allege the following elements to state an equitable estoppel claim:

(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof.

*Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001).  Defendants

argue that Plaintiff is relying on the MOU and Term Sheet as the basis for its reasonable

reliance, and for the same reasons the promissory estoppel claim fails, Plaintiff cannot

establish an equitable estoppel claim.  Mem. Supp. Mot. Dismiss Failure State Claim 7.

They argue that the "words in those documents notify the parties that the documents are

not final and cannot be relied upon as enforceable."  *Id.*

      Plaintiff argues that it has sufficiently alleged an equitable estoppel claim.  Resp.

Mot. Dismiss Failure State Claim 8.  It argues that Defendants misrepresented or

concealed that its interest would be diluted, that Defendants knew there would be a

dilution of its interest but failed to inform it, that Defendants intended or expected it to

act on the representation "as demonstrated by the performance and acceptance of the

software development work," and that it reasonably relied on Defendants' representations

by causing software development work to be performed.  *Id.*

      For similar reasons as to why the Court found the promissory estoppel claim

insufficiently pleaded, the Court finds the equitable estoppel claim insufficiently pleaded.

*See Geva v. Leo Burnett Co., Inc.*, 931 F.2d 1220, 1223 n.3 (7th Cir. 1991) (noting that

the doctrines of promissory and equitable estoppel "seem to overlap in great part today").

The only representations to Plaintiff about a fifteen percent ownership interest pleaded in

the Amended Complaint are the representations made in the MOU and the Term Sheet.  It

was not reasonable to rely on the MOU, which was clearly preliminary.  And it was not

reasonable to rely on the Term Sheet by performing software development work and

expect a fifteen percent ownership.  If Plaintiff is referring to another representation

Defendants made, it is not pleaded in the Amended Complaint nor identified in the

16

response to the motion to dismiss.  Defendants' motion must be granted as to this claim as well.

### iv.  Breach of Fiduciary Duty

In the Amended Complaint, Plaintiff alleges that Burns and Arora had fiduciary duties of loyalty and care to Plaintiff and Baheti as "founder[s], director[s] or officer[s] of MOCA."  Am. Compl. 12.  It alleges that they breached these duties because they "caused MOCA to issue more stock to Burns [and Arora] than agreed by the parties, as reflected in the MOU and the . . . Term Sheet, and thereby diluted [Plaintiff's] interest." *Id.* at 12, 13.  It alleges that Burns and Arora "elevated [their] interests over those of [Plaintiff]."  *Id.*

"To state a claim for breach of fiduciary duty, a plaintiff must allege the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach."  *C.O.A.L., Inc. v. Dana Hotel, LLC*, 82 N.E.3d 1262, 1283 (Ill. App. Ct. 2017) (quotation marks omitted).  Defendants argue that "Plaintiff has not pleaded facts giving rise to a fiduciary duty on either Arora or Burns."  Mem. Supp. Mot. Dismiss Failure State Claim 8.  They also argue that "[a]ssuming that there existed a fiduciary duty to potential shareholders that Burns and Arora might have . . . , [P]laintiff has not pleaded enough facts to state a claim that is plausible on its face."  *Id.*  It argues that neither the Term Sheet nor the MOU "grant [P]laintiff the right to ownership of 15% of the stock of Moca."  *Id.*

Plaintiff complains that Defendants "fail to cite any authority or analyze their mere conclusion" that Plaintiff has failed to state a plausible claim that Burns and Arora can be liable for proposing ownership percentages of Moca other than those mentioned in

the MOU and Term Sheet. Resp. Mot. Dismiss Failure State Claim 9. But Plaintiff fails

to offer any authority or analysis of its conclusion that it has stated a claim either.

Regardless, its argument appears to be based on a misunderstanding of Defendants'

motion. Plaintiff argues that Defendants' "contention is contrary to their own words,"

citing to documents which, the Court surmises, Plaintiff thinks show Defendants did offer

it an ownership percentage below fifteen percent. *Id.* But the Court does not understand

Defendants to be arguing that they did not, in fact, offer Plaintiff an ownership

percentage less than fifteen percent. Instead, the Court understands them to be arguing

that Plaintiff has not pleaded any facts which support finding that they have any sort of

liability for doing so because the MOU and the Term Sheet were not binding.

Plaintiff's only apparent response to Defendants' fundamental argument that there

are no allegations suggesting a fiduciary duty is to cite to case law for the proposition that

"[p]romoters or incorporators of a Delaware corporation owe a fiduciary duty to those

who have subscribed for its stock," *Id.* at 8 (citing *Bovay v. H.M. Byllesby & Co.*, 12

A.2d 178, 186 (Del. Ch. 1940), and *Verizon Commc'ns, Inc. v. Ill. Nat'l Ins. Co.*, No.

N14C-06-048 WCC CCLD, 2017 WL 1149118 (Del. Super. Ct. Mar. 2, 2017)),[6] and the

proposition that "directors of a corporation are charged with a fiduciary duty to

shareholders of a corporation," *id.* at 8–9 (citing *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del.

1939)).

Plaintiff never became a shareholder, so absent any further support or analysis of

this issue, the Court will not find the Amended Complaint adequately pleads a claim that

Arora and Burns's fiduciary duties to shareholders extended to Plaintiff. *See Feldman v.*

---

[6] Plaintiff fails to note that this case was reversed by the Delaware Supreme Court. *See In re Verizon Ins. Coverage Appeals*, 222 A.3d 566 (Del. 2019).

*Cutaia*, Civ. A. No. 1656-N, 2006 WL 920420, at *6 n.37 (Del. Ch. Apr. 5, 2006) ("The

Delaware Supreme Court has consistently held that directors do not owe fiduciary duties

to future stockholders.").

Plaintiff provides no legal support or analysis for its new interpretation of the

claim that Arora and Burns owed it a fiduciary duty arising out of a stock subscription.  A

stock subscription is an agreement to purchase stock.  1 R. Franklin Balotti & Jesse A.

Finkelstein, Del. L. Corps. & Bus. Orgs. § 1.9 ("The stock subscription . . . is an

agreement to take and pay for original unissued shares of a corporation formed or to be

formed . . . .").  A fiduciary duty claim arising out of the relationship between a promoter

and subscriber would require that Arora and Burns be promoters and that Plaintiff have a

subscription agreement for Moca's stock.  Determining whether the allegations of the

Amended Complaint are sufficient to allege such a claim would involve applications of

Delaware law not identified or analyzed by Plaintiff.  "It is not the Court's responsibility

to find arguments, facts, and supporting case law for the parties."  *Sanders v. JGWPT*

*Holdings, Inc.*, No. 14 C 9188, 2016 WL 4009941, at *11 (N.D. Ill. July 26, 2016); *see*

*Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006) ("An advocate's job is

to make it easy for the court to rule in his client's favor . . . .").  The Court will therefore

not consider this interpretation of the claim.

The Court grants Defendants' motion as to the breach of fiduciary duty claims

against Burns and Arora.

### v.  Exchange Act Section 10(b)

In the Amended Complaint, Plaintiff alleges that Defendants solicited an

investment from it in exchange for software development work, that subsequent to

soliciting the investment Defendants sought to dilute its ownership interest, and that

Defendants never informed it that its interest would be diluted.  Am. Compl. 6–7.  It

alleges that this conduct amounts to omitting a material fact in connection with the

solicitation of its investment and that Defendants engaged in manipulative and deceptive

conduct in connection with a securities transaction in violation of § 10(b) of the

Exchange Act, 15 U.S.C. § 78j(b).  Am. Compl. 7.

       To plead a claim under § 10(b) of the Exchange Act, a plaintiff needs to allege:

"(1) a material misrepresentation or omission by the defendant [s]; (2) scienter; (3) a

connection between the misrepresentation or omission and the purchase or sale of a

security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6)

loss causation."  *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414 (7th Cir.

2015) (alteration in original) (quotation marks omitted).  "A plaintiff cannot recover [for

a § 10(b) violation] without proving that a defendant made a material misstatement *with

an intent to deceive*—not merely innocently or negligently."  *Merck & Co. v. Reynolds*,

559 U.S. 633, 648–49 (2010).  A plaintiff alleging that a defendant "omit[ted] to state a

material fact necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading," 17 C.F.R. § 240.10b-5(b),

must "state with particularity facts giving rise to a strong inference that the defendant

acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A).

       Defendants argue that Plaintiff has not pleaded that there was a purchase or sale

of a security.  Mem. Supp. Mot. Dismiss Failure State Claim 9.  They acknowledge that

"[a]n enforceable contract for the purchase or sale of stock can suffice" but argue again

that Plaintiff has not alleged facts to support the existence of an enforceable contract.  *Id.*

at 9–10.  Defendants also argue that Plaintiff has failed to allege that the failure to disclose that Plaintiff's fifteen percent interest would be diluted later was material, was relied upon by Plaintiff, caused economic loss, or was done with scienter.  *Id.* at 11.

Plaintiff responds that it "has sufficiently pled a breach of contract claim, and this is not the time to assess the merits of the evidence in support or contravention of the claim."  Resp. Mot. Dismiss Failure State Claim 10.  But as the Court explained above, Plaintiff has failed to adequately allege a contract for the sale of fifteen percent of Moca's ownership in exchange for software development work.  *See supra* section III(b)(i).  Moreover, Plaintiff fails to grapple with Defendants' argument that it did not plead facts to show that the failure to disclose was done with scienter.  Its only response to Defendants' argument regarding reliance, materiality, scienter, and economic loss is to say generally that "nothing in the MOU or Term Sheet states [Plaintiff's] fifteen percent . . . interest will *necessarily* be diluted."  *Id.*

The relevant inquiry for scienter is whether Defendants' failure to disclose that Plaintiff's interest would be diluted was done with the intent to deceive.  A plaintiff must set forth facts "showing that it is at least as likely as not that the defendant acted with the relevant knowledge or intent."  *Merck*, 559 U.S. at 649 (quotation marks omitted).  The Court was pointed to no facts in the Amended Complaint or the response to the motion to dismiss which suggest that Defendants acted with intent to deceive (let alone that show it is at least as likely as not that they acted with intent to deceive).  Defendants' motion is granted with respect to the Exchange Act claim as well.

vi.  **ISL**

Plaintiff incorporates the allegations from its federal securities fraud claim in its Illinois securities fraud claim and alleges that Defendants violated § 12(F) and § 12(G) of the ISL, 815 ILCS 5/12/F), (G), by engaging in manipulation and deceptive conduct in connection with a securities transaction.  Am. Compl. 8–9.

When considering claims under sections 12(F) and 12(G), Illinois courts look to federal securities fraud case law, including case law on claims under § 10(b) of the Exchange Act, though scienter is not an element of an ISL claim.  *Tirapelli v. Advanced Equities, Inc.*, 813 N.E.2d 1138, 1142 (Ill. App. Ct. 2004).  An ISL claim is not subject to the statutory heightened pleading standard the federal claim is, but it is subject to Federal Rule of Civil Procedure 9(b), which requires a plaintiff pleading fraud or mistake to plead with particularity the facts constituting fraud or mistake.

Because the claims are essentially subject to the same legal standard and based on the same facts, the parties make essentially the same arguments as with respect to the federal claim.  *See* Mem. Supp. Mot. Dismiss Failure State Claim 11–12 (arguing that Plaintiff fails to allege the sale or purchase of a security and fails to allege the circumstances of the misrepresentation with particularity); Resp. Mot. Dismiss Failure State Claim 11 (referring to the section addressing the federal securities claim).

The Court finds the claim insufficiently pleaded.  As explained above, Plaintiff has not alleged a contract for the sale of a security.  *See supra* section III(b)(i), (v). Moreover, Plaintiff fails to allege the circumstances surrounding the misrepresentation with the particularity required by Rule 9(b).  To meet Rule 9(b)'s standard, "a plaintiff ordinarily must describe the who, what, when, where, and how of the fraud."  *Pirelli*

*Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (quotation marks omitted).  This means the plaintiff must allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quotation marks omitted).  Plaintiff has failed to specify which representations are at issue, when they were made, how they were made, etc.  It is unclear whether Plaintiff is relying only on the MOU and Term Sheet or on other representations.

Defendants' motion is granted as to this claim as well.

### vii.   Common Law Fraud

Plaintiff incorporates the allegations from its federal securities claim into its common law fraud claim and alleges that Defendants "knew at the time they made the false representations and concealed the material facts . . . such representations were untrue and . . . Defendants were concealing material facts from" Plaintiff.  Am. Compl. 9.  It alleges that "Defendants acted with the intent to deceive and mislead [it], to fraudulently induce [it] to invest in MOCA and thereby enable . . . Defendants to profit, at the expense of" Plaintiff.  *Id.*  It argues it "acted reasonably in reliance upon" Defendants' false statements and material omissions by investing in Moca.  *Id.*

> The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.

*Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996).  To claim fraud based on an omission, the plaintiff must meet the elements of fraudulent misrepresentation and additionally "allege that the defendant intentionally omitted or concealed a material fact that it was under a

duty to disclose to the plaintiff."  *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012).  This fraud claim is subject to the heightened pleading standard of Rule 9(b).

Defendants argue that "[t]here are no facts alleged which would create a duty on the part of . . . [D]efendants to inform . . . [P]laintiff that its originally proposed equity position in the company might change before the stock in the company was issued" and that Plaintiff does not allege a misrepresentation of a material fact.  Mem. Supp. Mot. Dismiss Failure State Claim 13. Moreover, they argue that "Plaintiff has not pleaded who, what, when, and how it was represented to it that it would have a 15% non-dilutable stock position in the company."  *Id.*

Plaintiff responds that the breach of fiduciary duty claims contain the allegations that Defendants had a duty to disclose facts to Plaintiff.  Resp. Mot. Dismiss Failure State Claim 11. It also argues that "the record contains the allegation Arora provided conflicting explanations for attempting to dilute [Plaintiff's] fifteen percent . . . ownership interest . . . which serve as evidence of breaches of the promise [Plaintiff] would receive a fifteen percent . . . interest."  *Id.* The relevance of this argument to the common law fraud claim is not apparent to the Court.

Regardless, as the Court explained in the breach of fiduciary duty section, Plaintiff has not alleged facts showing that Burns and Arora owed Plaintiff a fiduciary duty.  *See* section III(b)(iv).  And as the Court explained in the previous section, Plaintiff has failed to include sufficiently detailed allegations about the representations at issue.  *See* section III(b)(vi).  These findings compel the Court to conclude that the common law fraud claim is insufficiently pleaded as well.  Defendants' motion is granted as to this claim.

### viii.  Injunctive Relief

The Amended Complaint also contains a count for injunctive relief.  *See* Am. Compl. 13–14.  Defendants do not specifically move to dismiss this count, but injunctive

relief is not a separate claim that could remain pending without any substantive claims.

*See Onyango v. Downtown Ent., LLC*, 525 F. App'x 458, 460 (7th Cir. 2013) ("Onyango should not have characterized his request for injunctive relief as a separate count of his complaint, and the district court's order striking the injunctive 'count' thwarts him only from obtaining an injunction without succeeding on his underlying . . . claims—an impossible feat in any event."). "[I]njunctive relief . . . is a remedy, not a cause of action, and thus should not be pleaded as a separate count." *Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 n.4 (7th Cir. 2019). The inclusion of this count does not prevent the Court from dismissing Plaintiff's Amended Complaint in its entirety.

## CONCLUSION

Accordingly, the Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 2, is DENIED. The Rule 12(b)(6) Motion to Dismiss Amended Complaint for Failure to State a Claim, ECF No. 13, is GRANTED, though Defendants' request for oral argument is DENIED. The Motion for Leave to File Reply to Plaintiff's Response to Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 15, is GRANTED. The Clerk is directed to file the reply, Mot. Leave File Reply Ex. 1, ECF No. 15-1, on the docket. Plaintiff's Amended Complaint, ECF No. 11, is DISMISSED. Plaintiff is granted leave to amend its complaint, if it so desires, to address the deficiencies identified in this Order within fourteen days.

Entered this 14th day of December, 2020.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE

25